CLERKS OFFICE
US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

1/26/2026

LAURA A. AUSTIN, CLERK
BY: s/J. Lopez
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Case No. 3:14-cr-00016** |
| v. | ) | |
| | ) | **Hon. Robert S. Ballou** |
| SHANTAI MONIQUE SHELTON | ) | **United States District Judge** |

## MEMORANDUM OPINION

This matter is before the Court on Shantai Monique Shelton's Motions for Compassionate Release or Sentence Reduction. Dkts. 1227, 1243. In her *pro se* motion, Shelton argues she is entitled to compassionate release because of she suffers from serious medical conditions, sexual abuse in prison, and because there is a sentencing disparity between her "unusually long" sentence and sentences imposed on similarly situated defendants. Dkt. 1226. The Court appointed a federal public defender to represent Shelton. Dkt. 1238. Shelton's counsel filed a supplemental motion noting that she was unable to cite evidence of extraordinary and compelling reasons to justify modification of the term of imprisonment. Dkt. 1243. The United States opposes Shelton's request for relief. Dkt. 1248. This matter is now fully briefed.

Shelton has not established extraordinary and compelling reasons warranting compassionate release. Accordingly, her motion is **DENIED**.

## BACKGROUND

In February 2016, a jury convicted Shelton of sixteen offenses arising out of her participation in the Double Nine Goon Syndikate (DNGS), a violent street gang, including the kidnap and murder of Kevin Quick, an off-duty police officer. Dkt. 995. While operating as part of DNGS, Shelton also participated in multiple robberies and assaults as part of her service as a "Seargent" in DNGS. Dkt. 1248. Specifically, the jury convicted Shelton of conspiracy to

participate in a racketeering enterprise, in violation of 18 U.S.C. §§ 1962(d) and 1963(a), Hobbs

Act robbery, in violation of 18 U.S.C. § 1951(a), kidnapping and murder in aid of racketeering, in

violation of 18 U.S.C. § 1959, murder of a witness, in violation of 18 U.S.C. § 1512(a)(1)(C), and

related firearm offenses, in violation of 18 U.S.C. § 924(c). Dkt. 821.

On September 19, 2016, Shelton was sentenced to life plus 82 years. Dkt. 821. The 82-year

addition resulted from mandatory consecutive sentences under 18 U.S.C. § 924(c): seven years for

the first conviction, and 25 years each for the three subsequent convictions to run consecutively to

the other sentences imposed. Dkt. 1131 at 2. Shelton and her codefendants appealed. Dkt. 849. The

Fourth Circuit vacated Shelton's conviction on count 27 for discharging a gun during and in

relation to a crime of violence, affirmed the remainder of the judgment, and remanded for

resentencing. *United States v. Mathis*, 932 F.3d 242, 267–68 (4th Cir. 2019). Shelton moved for

resentencing under § 403 of the 2018 First Step Act. Dkt. 1131. The Court granted her motion and

applied the amended § 924(c) sentencing scheme on resentencing. Dkt. 1132. Accordingly, the

Court resentenced Shelton to life plus 34 years. Dkt. 1157. The Fourth Circuit affirmed the new

sentence. *United States v. Shelton*, No. 21-4566, 2023 WL 2888554, at *2 (4th Cir. Apr. 11, 2023).

Shelton has served ten years of her sentence. She now seeks compassionate release under 18 U.S.C.

§ 3582 or, in the alternative, 28 U.S.C. § 2255.[1] Dkt. 1226.

<u>DISCUSSION</u>

Compassionate release is an exception to the general rule that a district court may not

modify a term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c); *United States v.*

*Ferguson*, 55 F.4th 262, 267–68 (4th Cir. 2022); *United States v. Davis*, 99 F.4th 647 (4th Cir.

2024). The 2018 First Step Act allows prisoners to file motions for compassionate release, where

---

[1] As discussed below in Part I.C., a defendant may not challenge the validity of her conviction in
a compassionate release motion. *See United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022).

previously only the Bureau of Prisons could do so. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Prior to filing a motion under 18 U.S.C. § 3582(c)(1)(A), a prisoner must exhaust his administrative remedies by requesting the BOP move for compassionate release and then waiting 30 days for the BOP to act. Here, Shelton submitted a request for compassionate release via email on February 2, 2025. Dkt. 1226 at 2. The 30-day waiting period expired. *Id*. Thus, Shelton has exhausted her administrative remedies.

Courts follow a sequential inquiry to analyze a motion for compassionate release once the administrative exhaustion requirement is met. 18 U.S.C. § 3582(c)(1)(A); *Davis*, 99 F.4th at 653–54. First, the court determines whether the prisoner has shown extraordinary and compelling reasons warranting a sentence reduction. *Id*; *see also United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). The burden is on the defendant to show extraordinary and compelling reasons, an "exceptionally high standard for relief." *United Sates v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020). If that condition is met, the court considers any applicable 18 U.S.C. § 3553(a) sentencing factors. *Davis*, 99 F.4th at 654. The court must then "determine whether the requested reduction in sentence is consistent with 'applicable policy statements issued by the Sentencing Commission' and whether the defendant is a danger to the safety of any other person or the community." *Id*; 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

## I.    Extraordinary and Compelling Reasons

In May 2023, the Sentencing Commission promulgated a new policy statement to govern compassionate release motions filed by defendants. Under U.S.S.G. § 1B1.13, the Sentencing Commission defined extraordinary and compelling circumstances: (1) the defendant suffers from enumerated medical circumstances; (2) the defendant is at least 65 years old, has deteriorating health, and has served the lesser of at least 10 years or 75 percent of his sentence; (3) the caregiver

of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse, registered partner or parent becomes incapacitated and the defendant is the only available caregiver; (4) the defendant was a victim of physical or sexual abuse committed by an individual with custody or control over the defendant while he was incarcerated; (5) "other reasons" similar in gravity; or (6) the defendant has served at least 10 years of an "unusually long sentence" and a change in the law (other than an amendment to the Guidelines manual that has not been made retroactive) has produced a "gross disparity" between the sentence being served and the sentence likely to be imposed when defendant files his motion. *See* U.S.S.G. § 1B1.13.

Shelton argues that compassionate release is warranted for three reasons: (1) her declining health due to inadequate medical treatment and inability to provide self-care, (2) sexual abuse she endured throughout her incarceration, and (3) a change in the law causing gross disparity in sentencing. Dkt. 1226.

### A.    Medical Conditions

Shelton asserts four medical conditions that provide extraordinary and compelling reasons for release: obesity, diabetes, high blood pressure, and respiratory diseases. The court has reviewed her medical records filed *in camera* by the government. *See* Dkt. 1247. Her arguments fall within two medical condition categories that can justify compassionate release. First, a medical circumstance is an "extraordinary and compelling reason" if the defendant suffers from a serious medical condition that diminishes the defendant's ability to provide self-care and from which she is not likely to recover. U.S.S.G. § 1B1.13(b)(1)(B). Second, a medical condition may justify compassionate release if the condition (1) requires long-term care, (2) the care is not being provided, and (3) the lack of care puts the defendant at serious risk of deterioration of health or death. U.S.S.G. § 1B1.13(b)(1)(C).

1. <u>Shelton's Medical Conditions Do Not Render Her Unable to Provide Self-Care</u>

To show inability to provide "self-care," petitioners generally must show "a high level of disability." *United States v. Turpin*, No. 6:06-CR-00025, 2025 WL 1150728, at *3 (W.D. Va. Apr. 17, 2025). An example of inability to provide self-care includes a case where the defendant is unable to walk, *United States v. Handy*, No. PJM 04-0559, 2020 WL 2041666, at *5 (D. Md. April 28, 2020), but not situations where the defendant's mobility is merely limited. *Turpin*, 2025 WL 1150728, at *3 (quoting *United States v. Vaughn*, 2025 WL 84215, at *4 (W.D. Va. Jan 13, 2025)). Generally, inability to provide self-care requires a showing of mobility challenges, inability to eat meals, or inability to maintain personal hygiene. *Turpin*, 2025 WL 1150728, at *3. Conversely, defendants have been deemed able to provide self-care even when suffering from serious conditions, including "a double amputee who required the use of prosthetics to ambulate and who also suffered from phantom pain, a propensity for infection, diabetes, kidney disease, and high blood pressure" and "an inmate with vision loss due to uveitis who could not climb stairs and was limited to a lower bunk." *United States v. Smith*, No. 7:16-CR-00057, 2024 WL 126994, at *3 (W.D. Va. Jan. 11, 2024) (internal citations omitted).

Shelton argues that high blood pressure, diabetes, obesity, and respiratory illness are all serious medical conditions that justify compassionate release. Dkt. 1226 at 2. But Shelton has maintained a job throughout her incarceration. Dkt. 1226 Ex. A. She does not allege mobility issues or inability to eat or bathe. Dkt. 1226. In *United States v. Barnhart*, the Court denied the petitioner's request for compassionate release despite his long, well-supported list of ailments, noting that "no restrictions have been imposed on his activities." 704 F. Supp. 3d 679, 685–86 (W.D. Va. 2023). The Bureau of Prisons classifies Shelton as "Care Level 2," which is "used for 'stable outpatients who require clinical evaluations monthly to every 6 months' whose 'conditions

can be managed through routine, regularly scheduled appointments with clinicians for monitoring.'" Dkt. 1248 at 6. Shelton merely disagrees with her treatment plan and impact, arguing that medical personnel have been unable to lower her blood pressure and have failed to provide a proper diet to treat her diabetes. Dkt. 1226 at 3. These claims fall far short of the strictures of U.S.S.G. § 1B1.13(b)(1)(B). Shelton does not plausibly allege that her medical conditions render her unable to provide self-care.

    2.  <u>Shelton's Medical Conditions Are Adequately Treated</u>

A defendant may also be entitled relief on a showing that she requires specialized or long-term medical care for a serious condition and that care is not being provided, exposing the defendant to risk of serious deterioration in health or death. U.S.S.G. § 1B1.13(b)(1)(C). In *United States v. Samuel*, a neurologist recommended the defendant, who had an array of serious medical conditions, undergo an MRI and other cognitive testing. No. CR ELH-16-0117, 2023 WL 8650366, at \*15 (D. Md. Dec. 14, 2023). Over a year later, the tests had not been performed. *Id*. The court concluded that this failure to provide treatment fell within U.S.S.G. § 1B1.13(b)(1)(C) because neurological testing qualified as "specialized care," and it was not provided in a timely manner. *Id*. Further, the combination of the defendant's "already precarious health status" and failure to receive specialized testing "place[d] him 'at risk of serious deterioration in health or death.'" *Id*. Conversely, in *United States v. Hunter*, the court found that although the defendant suffered from serious medical conditions, failure to treat was not shown because he received healthcare in prison. No. 3:12-CR-289-MOC, 2024 WL 3464039, at \*2 (W.D.N.C. July 18, 2024), *aff'd*, No. 24-6752, 2025 WL 2506070 (4th Cir. Sept. 2, 2025). In that case, the defendant suffered from elevated hormone levels, long COVID-19, pituitary adenoma, and Post Incarceration Syndrome. *Id*. The defendant "has been examined by a neurologist . . ., has had bloodwork

completed, and has had medication prescribed." *Id*. Because the defendant received adequate medical treatment, the court found that the defendant did not allege failure to provide specialized treatment as contemplated under U.S.S.G. § 1B1.13(b)(1)(C).

Shelton argues that her blood pressure, diabetes, and respiratory illness are all worsening because she is not receiving adequate care. Dkt. 1226 at 2. Shelton cites *United States v. Fleming* as providing support for compassionate release due to medical conditions, including obesity and diabetes. *Id*. Shelton's reliance on *Fleming* is misplaced. In *Fleming*, the defendant's underlying conditions were extraordinary and compelling reasons because those conditions posed an increased risk of contracting COVID-19. No. CR ELH-08-086, 2022 WL 743955, at *18 (D. Md. Mar. 11, 2022). Increased susceptibility to an ongoing outbreak of infectious disease is a separate ground for relief under U.S.S.G. § 1B1.13(b)(1)(d) and is not at issue in this case. Further, in finding a sentence reduction appropriate, the court relied in part on the defendant's eligibility for a sentence reduction under § 404 of the 2018 First Step Act. *Id*. at 20. Shelton was resentenced pursuant to the amendments to § 924(c) in the 2018 First Step Act, so that justification is inapplicable here.

As to her own medical status, Shelton makes three complaints. First, she alleges that she does not receive blood pressure medication "used by most Americans," which has caused her blood pressure to be "at stroke levels." Dkt. 1226 at 3. Second, she alleges that she is given high carbohydrate food that is improper for a diabetic, leaving her "dizzy and sick." *Id*. Third, she generally alleges that the prison population suffers from respiratory illness due to "toxic mold and friable asbestos." *Id*.

The government argues that Shelton's medical records show that her conditions are adequately treated. Dkt. 1248. I agree. Shelton is prescribed three common medications to treat her high blood pressure, receives daily insulin injections, and is treated for obesity with

semaglutide. Dkt. 1248-2 at 281 (sealed). She does not specify worsening respiratory issues, or identify the specific respiratory disease impacting her. Mere disagreement with the prescribed treatment plan does not constitute failure to provide treatment. *See United States v. Ayyad*, No. 8:15-CR-00157, 2024 WL 3424083, at *8 (D. Md. July 15, 2024) (holding that neither the availability of more medical treatment options upon release nor the displeasure with the quality of food and medical care within the BOP provide an extraordinary and compelling reason for release). The Court recognizes that Shelton's medical conditions cause her discomfort and stress. To meet the high burden under § 1B1.13(b)(1)(C), Shelton must show both that medical care is not being provided and as a result, she is at risk of serious deterioration in health. *See United States v. Dowell*, No. 4:21-CR-00010, 2025 WL 644291, at *5 (W.D. Va. Feb. 27, 2025). The record shows that Shelton is receiving regular treatment for her health conditions, and she has failed to allege serious deterioration in her health condition. Therefore, Shelton's disagreement with her medical treatment plan is not extraordinary and compelling within the definition of 18 U.S.C. § 3582(c)(1)(A).

**B.    Sexual Abuse**

A prisoner who is subjected to sexual abuse may be entitled to compassionate release. However, under U.S.S.G. § 1B1.13(b)(4), sexual abuse is only an extraordinary and compelling reason in limited circumstances. First, the defendant must show that the abuse was committed by or at the direction of a corrections officer or other prison employee with custody or control over the defendant. If the defendant identifies a covered perpetrator, the defendant must then show that the abuse included a qualifying physical act, a list of which are specifically delineated in 18 U.S.C. § 2246(2). Finally, the defendant must meet a high standard of proof to show the alleged sexual abuse. An extraordinary and compelling reason exists only if the defendant establishes misconduct "by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding

in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." U.S.S.G. § 1B1.13(b)(4).

Shelton argues she is entitled to compassionate release as a victim of sexual abuse. To support her argument, Shelton first asserts that she was sexually abused by Bureau of Prison employees at FCI-Aliceville and FCI-Tallahassee. Dkt. 1226 at 3. Shelton neither reported the abuse at the time, nor provided any details of specific incidents of abuse in her motion, claiming she feared retaliation. *Id*. To account for the lack of detail, Shelton argues "a review of news articles reporting on rampant sexual abuse of women in federal prisons, nationwide, along with the Court's knowledge of large numbers of victims not reporting rape, may assure the Court of the Defendant's credibility on the claim of her sexual abuse during incarceration." *Id*. Second, Shelton asserts that being forced to shower and share facilities with biologically male inmates constitutes sexual abuse. *Id*. Specifically, she alleges that she is presently housed with "at least four biological male inmates, two of who are child molesters and/or serial rapists of women and children." *Id*. Although Shelton does not report specific instances of abuse, she cites statistics suggesting that biologically male inmates are having sex with biologically female inmates, causing pregnancy and STIs, and a recent executive order to remove biologically male inmates from women's prison. *Id*. at 4.

1. Shelton Does Not Allege Covered Sexual Abuse Perpetrated by Prison Officials

Insofar as she alleges abuse by prison officials, Shelton's claims fulfill the covered perpetrator requirement of U.S.S.G. § 1B1.13(b)(4). However, Shelton has failed to allege facts that fall within the statutory definition of sexual abuse. Shelton alleges that throughout her incarceration she "has be [sic] sexually harassed and abused, by male officers and male inmates" and that the officers "were later prosecuted for sexually abusing women in their custody." Dkt.

1226 at 3. She does not claim that these officers were prosecuted for sexual abuse that involves her specifically.

These claims are insufficient under U.S.S.G. § 1B1.13(b)(4) for two reasons. First, she does not allege prohibited contact described by 18 U.S.C. § 2246(2). In *United States v. Gadson*, the defendant alleged that a prison guard repeatedly requested sexual favors. No. 2:19-cr-00122, 2:21-cr-00163, 2025 WL 1000991, at *14 (D. Maine Apr. 3, 2025). The court found solicitation of sexual favors was insufficient to prove a prohibited sexual act as defined by § 2246(2). *Id.* In that case, the defendant made specific allegations of inappropriate sexual conduct, which still fell short of an extraordinary and compelling reason. Here, Shelton makes broad allegations and does not allege any physical contact of the kind prohibited by 18 U.S.C. 2246(2). Therefore, her claim is insufficient under U.S.S.G. § 1B1.13(b)(4).

Second, Shelton does not assert that her claims are substantiated by an administrative, civil, or criminal judgment. This requirement may be waived if the proceedings are unduly delayed, or the defendant is in imminent danger. Shelton does not claim undue delay in prosecuting the sexual abuse allegations. She does claim fear of retaliation. Dkt. 1226 at 3. However, Shelton's vague, unspecific notions of sexual abuse provide no basis for a finding that she is in imminent danger. *See United States v. Seals*, No. 1:13-CR-89, 2025 WL 209212, at *2 (N.D. Ind. Jan. 14, 2025) (denying a motion for compassionate release under § 1B1.13(b)(4) when the defendant only vaguely references sexual abuse and makes no showing of the requisite standard of proof or imminent danger). To support her allegations, Shelton cites several recent articles describing arrests and convictions of Bureau of Prison officers for sexual assault of prisoners. Dkt. 1226 at 12–15 (Exhibit C-1, C-2). Shelton does not allege that she was the victim in these cases, but that they show a general practice of sexual abuse in FCI-Aliceville, FCI-Tallahassee, and throughout

the Bureau of Prisons. *See United States v. Radulescu*, No. 19-CR-651, 2024 WL 5220421, at *3 (S.D.N.Y. Dec. 26, 2024) (holding that an unsubstantiated claim of sexual abuse is not an extraordinary and compelling reason). A general showing that sexual abuse has occurred, but not against the defendant, is insufficient. *Cf. United States v. Lambert*, No. CR 19-08, 2025 WL 2735856, at *5 (D. Mont. Sept. 24, 2025) (holding that the defendant satisfied the standard of proof under (b)(4) because she provided specific allegations, filed a civil suit against the offending prison guard, and was subpoenaed to testify in a criminal case against the guard). Although Shelton generally cites a recurrent problem of sexual abuse within the Bureau of Prisons, she does not provide the requisite level of proof.

2. Shelton's Allegations of Abuse Perpetrated by Other Inmates Do Not Provide an Extraordinary and Compelling Reason

Insofar as Shelton alleges sexual abuse due to cohabitation with biologically male inmates, she makes no showing that the abuse was at the direction of a corrections officer or other employee, nor that a qualifying act occurred. In *United States v. Hardin*, the defendant brought a similar claim, asserting as a compelling and extraordinary reason for release the fact that she was forced to shower and share facilities with biologically male inmates. No. 1:12-CR-80, 2025 WL 2306848, at *7 (E.D. Tex. Aug. 11, 2025). The court found that the alleged abuse could not constitute an extraordinary and compelling reason because it was not attributable to correctional officers, nor did it involve physical contact defined by 18 U.S.C. § 2246(2) as a "sexual act." *Id*. The court also found that "voyeurism" by biologically male inmates was insufficient. *Id*. Shelton's near identical claims likewise fail. Dkt. 1226 at 4. Shelton cannot establish extraordinary and compelling reasons under U.S.S.G. § 1B1.13(b)(4).

C.     **Sentencing Disparity**

As a threshold matter, the question is whether Shelton is attempting to collaterally attack

her convictions under the federal habeas corpus statute, 28 U.S.C. § 2255, or if she has identified changes in the law that justify compassionate release under 18 U.S.C. § 3582. If the defendant challenges the validity of her conviction or sentence, the proper avenue for relief is through a federal habeas petition. *Davis*, 99 F.4th at 656. If the defendant instead identifies a sentencing disparity between her actual sentence and the sentence she would receive if sentenced today, the claim is properly considered as part of a compassionate release motion. *United States v. Worlds*, No. 21-7535, 2024 WL 3439422, at *1 (4th Cir. July 16, 2024).

Shelton may not collaterally attack the validity of her conviction in a motion for compassionate release, as 28 U.S.C. § 2255 is the exclusive remedy for challenging a federal conviction after direct appeal. *Ferguson*, 55 F.4th at 270 ("a defendant is foreclosed from using another mechanism, such as compassionate release, to sidestep § 2255's requirements"). In determining the type of relief sought, the Fourth Circuit held "[n]o matter how an inmate characterizes his request for relief, the substance of that request controls." *Davis*, 99 F.4th at 656 (quoting *Ferguson*, 55 F.4th at 269–72). The *Ferguson* court noted that a compassionate release motion may still be used to challenge the length of a sentence where a change in the sentencing law that occurred after sentencing (but did not apply retroactively) merited a reduction in the current sentence to conform to that change. 55 F.4th at 271. Therefore, I must first determine if the substance of Shelton's request for relief sounds in habeas or compassionate release.

In her motion, Shelton states, "the Court may consider relief pursuant to 28 U.S.C. 2255" and "the Court may decide [if] some of the claims for compassionate release qualify [her] for relief in a habeas corpus proceeding." Dkt. 1226 at 2, 5. Shelton argues that "applying the current case law, it is more than likely the Defendant is not guilty of the VICAR statute, Section 924(c), or witness tampering." *Id*. at 5. However, she also requests that "[t]hese arguments can be consider

12

[sic] actual innocent [sic] claims or extraordinary circumstances warranting relief." *Id*.

I address Shelton's argument that an intervening change in law caused a gross disparity in sentencing under U.S.S.G. § 1B1.13(b)(6). However, insofar as Shelton argues actual innocence of the crimes of conviction, those claims may not be addressed in a motion for compassionate release. *See United States v. Mixson*, No. 7:08-CR-43, 2024 WL 1555017, at *4 (W.D. Va. Apr. 10, 2024) (holding that a petitioner cannot use a compassionate release motion to attack the validity of a federal conviction or sentence); *Ferguson*, 55 F.4th at 270 ("'Insisting that defendants use the correct process to challenge their convictions and sentences,' as the district court did here, 'is not empty formalism.'" (quoting *United States v. Sanchez*, 891 F.3d 535, 539 (4th Cir. 2018)).

To show an extraordinary and compelling sentencing disparity that justifies compassionate release, the defendant must show that she (1) has served 10 years of an "unusually long sentence" and (2) a change in the law produced a gross disparity between the sentence being served and the sentence likely to be imposed now. U.S.S.G. § 1B1.13(b)(6). A change in the law that does not produce a gross disparity may not be considered. U.S.S.G. § 1B1.13(c). The government does not dispute that Shelton has served 10 years of her sentence. Dkt. 1248 at 9.

1. <u>Shelton Is Not Serving an Unusually Long Sentence</u>

A correctly calculated Guidelines range is "the benchmark" used to determine an appropriate sentence. *Concepcion v. United States*, 597 U.S. 481, 498 n.6 (2022). When a sentence is within the guideline range, that militates against a finding that it is unusually long. *United States v. Locust*, 771 F. Supp. 3d 819, 830 (E.D. Va. 2025).

Shelton argues that the average sentence for murder in the federal system is 22 years to support her claim that a life sentence is unusually long. Dkt. 1226 at 4. The government argues that this justification is misleading, as the average murder sentence statistics include sentences for

second degree murder, conspiracy to commit murder, and other lesser crimes. Dkt. 1248 at 9. The government also notes that Shelton received a below-guideline sentence and emphasizes the heinous nature of her crimes. *Id.*

I agree that the sentence imposed in this case is not unusually long. As the government correctly points out, "the premeditated kidnapping and murder of a police officer . . . is among the more aggravated offenses encountered by a federal court." Dkt. 1248 at 9. At resentencing, Shelton acknowledged that the mandatory minimum sentence in this case was life plus 37 years. Dkt. 1142 at 2. She received life plus 34 years, a below-guideline sentence. A sentence may be usually long even if it is dictated by a mandatory minimum, but only if the defendant would not be subject to the same minimum today. *Kelly v. United States*, 789 F. Supp. 3d 434, 443 (E.D. Va. 2025) (holding that extraordinary and compelling reasons existed because the defendant, who was sentenced to mandatory life imprisonment for drug distribution, likely would not presently be subject to a life sentence). By contrast, Shelton would still be subject to a guideline range of life if sentenced today. U.S.S.G. §5A. Even more importantly, Shelton was convicted of murder in aid of racketeering, which still carries a mandatory penalty of life imprisonment or imposition of the death penalty. 18 U.S.C. § 1959(a)(1). Because Shelton cannot establish that her sentence was *unusually* long, her argument as to U.S.S.G. § 1B1.13(b)(6) fails.

2.  Shelton Does Not Allege a Change in Law Within the Meaning of Subsection (b)(6)

"Nonretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence." *Davis*, 99 F.4th at 657. Courts in the Fourth Circuit have found a change in the law when changes to the sentencing guidelines reduce the guideline range or change enhancements that would be applied. See e.g. *United States v. Crawley*, 140 F.4th 165, 171 (4th Cir. 2025) (holding that disqualification of a Virginia robbery conviction under the career-offender

provision constituted a change in the law); *United States v. Brown*, 706 F. Supp. 3d 516, 521 (D. Md. 2023) (holding that marijuana decriminalization and amendment to the career offender provision constituted a change in the law). A change in the law creates a "gross disparity" between the defendant's sentence and the one she would likely serve if sentenced today when the sentence imposed is "dramatically longer than necessary or fair." *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). The Eastern District of Virginia has held that the difference between a sentence of life and any lesser sentence is a gross disparity. *Kelly*, 789 F. Supp. 3d 434, 443 (E.D. Va. 2025).

Shelton cites three cases to support her argument that a change in the law caused a gross disparity in her sentence as compared to defendants currently sentenced for the same crime. Because these cases do not constitute changes in law that would have altered Shelton's sentence, she fails to show an extraordinary and compelling reason for release or sentence reduction.

First, Shelton cites *Burrage v. United States*, 571 U.S. 204 (2014), which articulated a new standard in cases involving drug distribution resulting in death. Shelton argues that had this but-for causation requirement been applied on her convictions under VICAR, witness tampering, and 18 U.S.C. § 924(c)(1)(A), she would not have been convicted. Shelton cannot attack the validity of her conviction in a motion for compassionate release. *Ferguson*, 55 F.4th at 270. Her argument that *Burrage* constitutes a change in law creating a gross disparity in sentencing is similarly unavailing. In *Burrage*, the Supreme Court held that cases of drug distribution causing death, a defendant is only liable for the death if the distributed drug is a but-for cause of death. 571 U.S. at 204. Shelton was not convicted of drug crimes, so this change in the law is inapplicable.

Second, Shelton cites *United States v. Thomas*, 87 F.4th 267 (4th Cir. 2023) and *United States v. Kinard*, 93 F.4th 213 (2024), arguing that the Fourth Circuit decreed a change in the purpose requirement for a "crime of violence" under U.S.C. § 924(c). Shelton further argues that

15

if she were tried today, she would not be convicted of VICAR, witness tampering, or a crime of violence under § 924(c) because the murder of Kevin Quick was an "unintended consequence" of a "robbery gone bad." Dkt. 1226 at 5.

In *Thomas*, the Fourth Circuit addressed whether VICAR assault with a dangerous weapon is a crime of violence under 18 U.S.C. § 924(c). 87 F.4th at 269. Applying the categorical approach,[2] the Fourth Circuit found that VICAR assault with a deadly weapon qualifies as a crime of violence and upheld the defendant's § 924(c) conviction. *Id.* at 274. In *Kinard*, the Fourth Circuit affirmed that the North Carolina statutory crime of assault with a deadly weapon required a mens rea sufficient to qualify as a crime of violence under 18 U.S.C. § 924(c). 87 F.4th at 214.

Again, Shelton is precluded from challenging the validity of her sentence or conviction in a motion of compassionate release. *See Ferguson*, 55 F.4th at 270. Additionally, neither opinion produced a change in the law, but merely confirmed two offenses that can satisfy the "crime of violence" requirement in 18 U.S.C. § 924. Therefore, Shelton cannot show extraordinary and compelling reasons under U.S.S.G. § 1B1.13(b)(6).

## II.    § 3553(a) Factors

If the defendant establishes extraordinary and compelling reasons for release, the Court must also consider whether the § 3553(a) factors weigh in favor of release or sentence reduction. Because Shelton has not established extraordinary and compelling reasons for compassionate release, I address the § 3553(a) factors only briefly. The § 3553(a) factors require the Court to assess (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect

---

[2] Under the categorical approach, the court "looks[s] to whether the statutory elements of the offense necessarily require the use, attempted use, or threated use of force." *Thomas*, 87 F.4th at 272 (quoting *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019)).

for the law, afford adequate deterrence, provide just punishment, protect the public from further crimes of the defendant, and provide defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the applicable Guidelines range; (5) any pertinent Sentencing Commission policy statements; and (6) the need to avoid unwarranted sentence disparities among similarly situated defendants. The Court should also consider rehabilitation efforts. *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019). The district court does not have to provide an in-depth explanation for each § 3553(a) factors as long as the record shows that the judge "considered the parties' arguments and had a reasoned basis for exercising his own legal decision-making authority. *United States v. Malone*, 57 F.4th 167, 176 (4th Cir. 2023) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In arguing that the § 3553(a) factors weigh in favor of release, Shelton focuses mainly on her rehabilitative efforts. She notes that she has taken available classes and programming, maintains prison work assignments, and has not had an incident report in the past two years. Dkt. 1226 at 5. She also cites her minimal criminal history, her low recidivism score, status as a youthful offender, and expresses remorse for her actions. *Id*. The government argues that the nature and circumstances of the offense and Shelton's history weigh heavily against release. Dkt. 1248 at 10–11.

I agree with the government in finding that the §3553(a) factors suggest compassionate release is inappropriate in this case. First, the nature and circumstances of the offense are particularly serious. Courts in the Fourth Circuit have found that the nature and circumstances of less serious crimes weigh against release. *See e.g.*, *United States v. Nicholson*, 787 F. Supp. 3d 254, 260 (E.D. Va. 2025) (holding that conspiracy to distribute cocaine while armed was a serious offense that weighed against release); *United States v. White*, No. 7:19CR71, 2020 WL 5026875,

17

at *4 (W.D. Va. Aug. 25, 2020) (holding that conviction for selling a significant amount of methamphetamine was a serious offense that weighed against release). Capital murder is perhaps the most serious offense adjudicated by our criminal justice system. *See United States v. Dawson*, No. CR ELH-94-0010, 2024 WL 3455002, at *13 (D. Md. July 17, 2024) (holding that although compassionate release was warranted under the circumstances, the nature of the crime of murder in connection with witness tampering was "among the most serious and egregious that a person can commit"). Additionally, Shelton was convicted not only of the kidnap and murder of an off-duty police officer, but also several other violent robberies and other gang-related offenses. Thus, this factor weighs against compassionate release.

Second, although Shelton had minimal criminal convictions before the instant case, her history and characteristics do not meaningfully weigh in favor of compassionate release. Shelton's convictions arose out of her involvement in DNGS, a gang committed to committing violent acts to further its own economic interests. Shelton cites *United States v. Taylor* for the proposition that the court may reduce a life sentence for murder in cases where the history and characteristics of the defendant, including rehabilitative efforts, justifies such a reduction. No. CR CCB-02-0410-3, 2023 WL 4407593 (D. Md. July 7, 2023). Like Taylor, Shelton was exposed to illegal drugs at a young age and struggled with mental health and substance abuse. Dkt. 1127. However, the *Taylor* court relied heavily on Taylor's youth at the time of offense and significant evidence from officials and peers as to his rehabilitative efforts. 2023 WL 4407593 at *6. Taylor's conduct occurred when he was 15–18 years old. *Id*. at 5. By contrast, Shelton was 23–24 at the time the offenses occurred. Additionally, although Shelton has expressed remorse and maintained good behavior for several years, she does not provide the depth of rehabilitation evidence considered in *Taylor*. *See also*, *United States v. Moses*, No. CR CCB-02-0410-2, 2023 WL 4421569, at *6 (D. Md. July 10, 2023)

18

(holding that personal characteristics including a troubled upbringing, youth at the time of the offense, and significant, well-documented rehabilitation efforts weighed in favor of compassionate release).

In considering the defendant's history and characteristics, the Court considers whether the defendant poses a danger to the community. *United States v. Bumbry*, No. 7:16-CR-30026, 2020 WL 4717911, at *3 (W.D. Va. Aug. 13, 2020) ("Given the danger posed by Bumbry's gang activities and as reflected in his prior criminal history, the court cannot conclude that he should be released prior to completion of his sentence"). Conviction for gang activity suggests incarceration may be necessary for community protection. *United States v. Wedlock*, No. CR CCB-16-267, 2022 WL 3227805, at *2 (D. Md. Aug. 10, 2022). Accordingly, Shelton's involvement in DNGS is a personal characteristic that counsels against compassionate release.

In general, courts in the Fourth Circuit have found that a defendant's history and characteristics, such as age, rehabilitative efforts, and good behavior while incarcerated can outweigh particularly serious offenses only in rare cases. *See United States v. Brown*, No. 2:16-CR-00122-DCN-2, 2023 WL 8006188, at *5 (D.S.C. Nov. 17, 2023); *United States v. Henriquez*, No. 1:15-CR-225-1, 2021 WL 5771543, at *6 (M.D.N.C. Dec. 6, 2021) ("Given his extraordinary rehabilitative efforts and his age, 48, the risk of recidivism is low, and he does not have a history of violence. He has taken full advantage of available educational and vocational training during his incarceration, positioning him for a successful transition into society."). An inmate seeking rehabilitation for extremely serious offenses like this one must "be more than just a 'model inmate.'" *United States v. Cornish*, No. CR RDB-07-604, 2024 WL 473807, at *5 (D. Md. Feb. 7, 2024) (internal citations omitted). Although Shelton's history of physical and mental health struggles, substance abuse, and her relative youth at the time of the offense weigh in favor of

release, these considerations are outweighed by the other § 3553(a) factors. *See United States v. Smith*, No. 5:16-CR-12-D, 2021 WL 2668804 (E.D.N.C. June 29, 2021) (holding that although the defendant had no prior criminal history, the offense conduct, misconduct in prison, and the seriousness of the offense justified denial of the defendant's motion for compassionate release). As to her rehabilitation, the Court recognizes that Shelton has maintained good behavior in prison for two years, expressed remorse for her involvement in these offenses, and maintained involvement in prison work assignments.[3] Dkt. 1226 at 5. Although her efforts are admirable, these steps towards rehabilitation alone are insufficient to justify compassionate release.

Third, the sentence must reflect the seriousness of the offense and promote just punishment and respect for the law. The sentence should provide specific and general deterrence, particularly in cases addressing the danger of street gangs. *Bumbry*, 2020 WL 4717911 at *4. Here, Shelton was sentenced to a below-guidelines sentence, largely governed by the applicable mandatory minimums. Due to the need to deter racketeering and gang activity, I believe this sentence provides deterrence and promotes just punishment and respect for the law without being greater than necessary.

Fourth, the applicable guideline range and the sentences available weigh against compassionate release. As discussed, if Shelton were sentenced today, she remains subject to a mandatory life sentence and her guideline range is a life sentence. 18 U.S.C. § 1959(a)(1). This factor weighs against compassionate release. Similarly, Shelton does not meaningfully assert a sentencing disparity with similarly situated defendants. The other capital defendants in this case also received life sentences. *See* Dkts. 1151, 1160, 1231.

Shelton's rehabilitation efforts and history and characteristics are far outweighed by the

---

[3] Although the Court notes that Shelton originally refused to complete assigned prison work assignments. Dkt. 1248-4 at 1–3.

seriousness of the crime, the sentences available, and the need to promote just punishment and respect for the law. The § 3553(a) factors thus weigh against compassionate release or sentence reduction.

CONCLUSION

For the reasons stated, I am unable to find that Shelton has an "extraordinary and compelling" reason that would entitle her to a sentence reduction or compassionate release under 18 U.S.C. § 3582(c)(1)(A). Her motions for compassionate release (Dkts. 1227, 1243) are **DENIED**. An order will follow.

Entered:  January 26, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge